ROOSE, Plaintiff-Appellee, v. BOYLE, Treas., et al., Defendants-Appellants.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20633.  Decided February 21, 1949.

Kuth & Meyers, Cleveland, for plaintiff-appellee.
Richard DeNobel, Roland A. Baskin, Cleveland, for defendant-appellants.

(NICHOLS, J, of the Seventh District, sitting by designation in place of MORGAN, J, of the Eighth District.)

## OPINION

By HURD, J:

This action in equity for injunctive relief originated in the Court of Common Pleas of Cuyahoga County, and is here on appeal on questions of law and fact from a judgment of said Court enjoining the collection of municipal special assessments levied by the City of Parma against certain sublots of the Parma Wood Subdivision for the cost of installing certain improvements including paving in the streets of said subdivision, sidewalks, water and curb connections in the years 1927 and 1928.

The cause is presented to this Court for trial de novo on the issues made by the pleadings; a transcript of the evidence taken before a Master Commissioner; the briefs and arguments of counsel. The record is voluminous, comprising six volumes of evidence both documentary and oral. Limitations of time and space prevent a discussion of this evidence in detail.

The plaintiff contends that the amount of the assessments levied against each of said sublots exceeds the fair market value of the land after said improvements had been installed. The plaintiff further contends that the amount of said assessments on each sublot constitutes the taking of his property without due process of law and is confiscatory and in violation of his constitutional rights as contained in **Sec. 19 Article I of the Constitution of the State of Ohio** and the 14th Amendment of the Constitution of the United States.

The defendants deny these contentions of plaintiff and by way of amended answer and argument, both oral and by brief, say that while there are minor issues, the main issues in this cause are: (1) whether the plaintiff can add together the several assessments against his property and claim that each individual assessment is invalid, if in fact he is able to establish that the total assessments equal or exceed the value of the property assessed after the installation of the improvements; (2) whether the fair market value of the property exceeds substantially the total assessments after the installation of the improvements.

The defendants raise other questions claiming that neither the plaintiff nor its predecessor in title filed any objections to any of said improvements or said assessments and that no objections have been made to said improvements or assessments by any one until the filing of this action; that the annual installments of the assessments levied for improvements were paid for several years or contracted to be paid pursuant to land contract between plaintiff's predecessor in title and various persons; that the said improvements were made pursuant to petition filed with the City of Parma requesting it to install said improvements which petition waived all assessment limitations and various notices required by law, including the notices required by §3818 and §3895 GC; that all the owners who were affected by the various improvements petitioned for said improvements; that the plaintiff is barred by the statute of limitations from bringing this action and is particularly barred by the statute of limitations from bringing this action to enjoin the collection of installments of special assessments which became due and payable more than four years prior to the commencement of this action; that the plaintiff, or his predecessor in title, in requesting said improvements or in failing to halt said improvements before they were begun, or in failing to object to said improvements or assessments or by their acts, plaintiff or his predecessor in title is guilty of laches and is now estopped to claim said assessments illegal.

Finally, the defendants argue that the claims of plaintiff should not be approved by a court of equity because plaintiff purchased the property in question some fifteen years after the improvements were installed, by deed assuming and agreeing to pay said assessments; that to approve or grant an injunction at this time, in view of all the circumstances, would enable plaintiff to cast the burden of these assessments upon the general taxpayers 'while at the same time reaping a huge

profit for himself and others who will be encouraged to bring similar suits.'

The plaintiff is the owner of 166 sublots fronting on Dawnshire Drive and Redfern Road in the Parma Wood Allotment. The record discloses that he purchased these lots in November, 1943, and by deed assumed and agreed to pay all the assessments of every kind and description due or to become due against said sublots. The deed carried revenue stamps of $9.35, which naturally leads to the conclusion that he paid an average of approximately $53.00 for each of said sublots. Instead of paying the assessments as agreed by deed, plaintiff brought this action within five months from date of acquisition to declare the assessments void and to enjoin their collection, the petition being filed April 6, 1944.

The record further indicates that The Parma Wood Company, the original owner, filed a plat of said subdivision on March 15, 1926 which is recorded in Volume 96 page 32 of Cuyahoga County Records. The Subdivision as platted has 319 lots and includes the two main streets of Dawnshire Drive and Redfern Road hereinbefore noted.

There appears in the record a letter of the engineer of the then village of Parma, dated Mar. 9, 1926, addressed to the council of the village reporting that improvement petitions had been filed by the Parma Wood Company, owner of the subdivisions, requesting installation of water and sewer on Dawnshire Drive and Redfern Road. It also appears from the record that there are letters dated May 21, 1928, by the village engineer reporting to the council of the municipality that sidewalks had been petitioned for by 98% of the property owners on Dawnshire Drive and 100% of the property owners on Redfern Road. Also in the record are petitions filed by the Parma Wood Company requesting installation of pavements on Dawnshire Drive and Redfern Road at the sole cost to said company, whereby the assessments and other limitations are waived. These petitions are signed by The Parma Wood Company, per L. G. Collister, President, and W. P. Edmonton, Secretary, with the corporate seal of the corporation attached and are a part of the records of the municipality.

Authority for these petitions is found in §3836 GC which provides that a municipality may assess the entire cost of the improvements, if such petition is filed, signed by 3/4 in interest of the property owners or the owners of 60% of the frontage abutting on the streets improved. Otherwise the municipality is required to pay at least 2% of the improve—

ments cost and the cost of intersections. See §3836 GC[1] and §3820 GC.[2]

Thereafter, resolutions of necessity were adopted by the council of the village of Parma on May 3, 1926, for water and sewer on Redfern Rd. and Dawnshire Drive. On December 22, 1926, resolutions of necessity were adopted by the municipality for pavements on the same streets and thereafter on May 21, 1928, resolutions of necessity were adopted for sidewalks on these streets.

According to the record all these necessity resolutions provided for the entire cost of said improvements. This action could not have been taken by the council without the petitions for the improvements signed by the required number of property owners. There is in law a presumption of regularity in respect of such official acts and there is nothing in the record indicating anything to the contrary.

The record also shows that ordinances to proceed with the said improvements were adopted as follows: Water and sewer May 24, 1926; pavement, Jan. 17, 1927; sidewalks June 11, 1928.

Final estimates were paid to contractors in the year 1928 as follows:

| Dawnshire Drive: | water and sewer | Feb. 20, 1928 |
| " | pavement | Sep. 4, 1928 |
| " | sidewalk | Nov. 10, 1928 |

*Sec. 3836 GC:*

Note 1. When a petition subscribed by three-fourths in interest of the owners or the owners of sixty percent of the foot frontage of property abutting upon a street, alley, or highway of any description between designated points in a municipal corporation, is regularly presented to the council for that purpose, the entire cost of any improvement of such street alley or highway, including cost of intersections and regardless of limitations of *Sec. 3820 GC* and without reference to the value of the lands of those who subscribed such petition, may be assessed and collected in equal annual installments, proportioned to the whole assessments in a manner which may be fixed by the council * * *. The interest on any bonds issued by the corporation, together with the annual installments herein provided for, and the cost of such proceedings and assessments shall be assessed upon the property so improved. * * *."

Note 2. *Sec. 3820 GC.* The corporation shall pay such part of the cost and expense of improvements for which special assessments are levied as council deems just, which part shall be not less than one-fiftieth of all such cost and expense and in addition thereto, the corporation shall pay the cost of intersections.

| Redfern Road: | water | Nov. 7, 1927 |
|---|---|---|
| " | sewer | Sept. 6, 1927 |
| " | pavement | Oct. 15, 1928 |
| " | sidewalk | Nov. 10, 1928 |

(Rec. 323)

After the said improvements were installed, assessments therefor were levied for each improvement based on the actual cost, made payable in ten annual installments, and certified to the county auditor for collection on the tax duplicate. Thereafter in the year 1938, pursuant to applicable sections of the General Code, the municipality refunded all of its special assessment bonds including the assessment bonds for the improvements on Dawnshire Drive and Redfern Road, and on January 3, 1939, pursuant to the Refunding law (§2293-5 (P) and §2292-5 (Q) GC, it respread all of its unpaid assessments.

The record further indicates that the individual amount assessed for water, sewer, pavement and sidewalks against the sublots in question were on an average per lot as follows:

| Dawnshire Drive: | Water | 112.80 | |
|---|---|---|---|
| | Sewer | 236.23 | |
| | Pavement | 259.63 | |
| | Sidewalk | 42.99 | $ 651.65 |
| | | | |
| Redfern Road: | Water | 110.75 | |
| | Sewer | 191.15 | |
| | Pavement | 268.09 | |
| | Sidewalk | 45.26 | |
| | | | $ 615.25 |

From the foregoing detailed factual history it appears to us as an inescapable conclusion that the improvements installed were made upon the petitions of the plaintiff's predecessors in title, whereby the predecessors in title were bound by agreement to pay for improvements in accordance with the provisions of the resolutions and ordinances adopted by council. Therefore it appears to us that the plaintiff who purchased these sublots some fifteen years after the improvements were installed does not occupy any better position than his predecessors in title upon whose petitions the improvements in question were installed in the first instance. If the owners who petitioned council successfully to have these improvements installed had brought suit immediately after their installation to abrogate the assessments and enjoin the collection thereof, they could not have been heard to complain as they would then be estopped by their own conduct from so doing.

The record shows further that the plaintiff in attempting to determine the cost of improvements under its claim of confiscation, is treating interest as part of the assessment in arguing for assessment limitations. This position we believe is untenable in view of the holding of the Supreme Court of Ohio in the case of **Wilcox v. Village of Edgerton, 103 Oh St 267**, the syllabus of which is as follows:

"Where a statute limits the assessment for local improvements to thirty-three and one-third percent of the actual value of the property so assessed after the completion of such improvement, and the village council pursuant thereto, by ordinance, fixes the mode of payment either in cash within twenty days or in ten annual installments, at the option of the property owner, such installments to bear the same rate of interest as the bonds issued in anticipation of the collection of the assessments:

HELD, upon the owner's own election to pay in ten annual installments, the interest charges upon such installments are not in violation of §3819 **GC** so long as he was given the option of paying it all in one payment within the thirty-three and one-third percent."

See also the dictum of the court at page 270.[3]

We conclude from the foregoing that in considering the costs of improvements where the same have been petitioned for and the owner has the option of paying in cash within thirty days or in ten equal installments with interest, the added interest may not be considered as a part of the cost of the improvements when considered in relation to the value of the property where it is claimed that the cost of the improvements is confiscatory.

Next, it will be noted that plaintiff proceeds upon the theory that he may cumulate the costs of all the improvements and then by adding together all the separate assess-

Note 3. *Wilcox* v. *Village of Edgerton, 103 Oh St 267 at page 270:*

"It is all left to the owner's option, whether he prefers time with interest or cash without interest. The assessment of cash without interest is made by the village. The ten installment assessment with interest is made by the owner; that is, he elects so to pay. For the favor of the time he assumes the burden of interest as fixed in the ordinance. He cannot complain at his own election, since, had he so desired, he might have paid the whole assessment in a lump sum within the statutory limitation of 33-1/3 percent."

ments levied against the property, regardless of the amount and time when levied, and if and when the total amount assessed equals or exceeds the market value of the property after the improvements are installed, claim that each and every assessment is as to him null and void. This process of rationalization by retrogression cannot stand the test of law or logic. Bearing in mind that plaintiff's predecessor in title petitioned for these improvements, such a process of reasoning would eventually reach a point of reductio ad absurdum. By such a method, property owners petitioning for improvements in number and amount sufficient to equal or exceed the value of their property could, when the saturation point was reached, escape the obligation of paying for the same by casting the entire burden upon the general taxpayers. The law never intended such result. Certainly the great powers of a court of equity should not be invoked by the injunctive process in support of such a plea.

Counsel point to and rely upon the case of **Domito v. Village of Maumee, 140 Oh St 229,** as authority for their contention that the assessments here are confiscatory and should be abrogated by the injunctive process. We consider that the Domito case stands as highest authority under the facts there presented but it is our considered opinion that there is a clear and unmistakable distinction between the facts of the Domito case and the facts of the instant case.

In the first place there is nothing in the opinion showing that the improvements in the Domito case were made upon the petition of 3/4 in interest or of 60% or more of the owners of foot frontage abutting upon the street in question. The case is authority for the proposition that the assessment levied against private property cannot equal or exceed the value of the property after the improvement is made but it is not authority for the proposition that cumulation of separate valid assessments levied over a period of time will eventually invalidate all of the assessments. It is clear from an examination of the case that there were two assessments, one by the county and one by the city. It is only the city assessment which was held void ab initio. The county assessment was not invalidated. Consequently the Domito case cannot be relied upon as authority for the theory contended for here, namely, that if the total separate assessments for the various improvements equal or exceed the value of the property assessed then each and every individual assessment thereby becomes invalid or void ab initio.

The second paragraph of the syllabus in the Domito case is also authority for the proposition that failure to make written objection as provided by law after notice of the improvement

and the amount levied therefor, precludes the owner from escaping payment by asserting non-compliance with statutory requirements on the part of the assessing body, although it does not estop him from resisting collection on a constitutional ground. We wish only to point out here that the time has long since passed when any attack could be maintained against the assessments in question here upon any statutory ground. Therefore, we must accept the proceedings in respect thereof as regular and in accordance with all statutory requirements.

We shall next consider the question of the claim of the plaintiff that the amount of the assessments levied against each of the said sublots exceeds the fair market value of the land after said improvements have been installed.

We have examined the record carefully on this subject; we have weighed the testimony of the experts who testified upon the trial of the case and have reached the considered conclusion that the plaintiff has failed to establish the allegations of his petition in this respect by a preponderance of the evidence. On the contrary, we find that the preponderance of the evidence on the question of valuation is definitely in favor of the defendants.

Not only do we find that the testimony of defendants' experts both in direct and on cross-examination is more credible, reasonable and probable than that of plaintiff's expert witnesses, but we find other facts in the record which materially substantiate the expert testimony proffered by the defendants showing that the value of the land was substantially in excess of the cost of the improvements after the same were installed even if we were constrained to accept the theory of cumulation of costs contended for by the plaintiff. The testimony of defendants' experts as to the market value is substantiated by other sales and purchase money mortgages as disclosed by the county records against other property in the vicinity. The land contracts of 1926, 1927 and 1928 for the sale of property in the Parma Wood Subdivision likewise may be considered in corroboration of the defendants' expert testimony. Also a first mortgage in 1927 to the United Banking & Trust Company (later The Central National Bank) in the sum of $76,400.00 on the property of The Parma Wood Company covering 191 lots, is independent, and disinterested and cogent evidence indicating values as of that time. There is also supporting evidence in the form of a bank appraisal in the year 1927 covering lots in the subdivision which indicates that the value of the land at the time was greatly in excess of the cost of the improvements installed.

Therefore we conclude by the greater weight of the evidence before us, as shown in the record, that the value of the sublots was considerably in excess of the cost of the improvements when the same were installed.

In conclusion it appears to us that the transaction of plaintiff in the purchase of these properties and in prosecuting this suit bears all of the aspects of a speculative venture which, if successful, would enable the plaintiff to gain substantial profits at the expense of the general taxpayers.

In view of the foregoing, we find it unnecessary to pass upon the other defenses pleaded in the amended answer of the defendants. In our opinion, which is contrary to that of the trial court, the plaintiff has failed to establish a clear right to the injunctive process and his petition for injunction should be denied. Consequently we conclude that all of the equities are in favor of the defendants and that the finding and decree should be for the defendants.

A journal entry may be prepared accordingly. Exceptions allowed.

SKEEL, J, NICHOLS, J, concur.